# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| ANTWAIN P. DOWNS | * | CIVIL ACTION NO.  09-1948 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

## Background & Procedural History

Antwain P. Downs protectively filed the instant application for Title II Disability Insurance Benefits on June 5, 2006.  *See* Tr. 24, 72-74.  He alleged disability since February 27, 2006, because of neck and lower back pain, high blood pressure, cholesterol, and headaches.  (Tr. 80, 84).  The claim was denied at the initial stage of the administrative process.  (Tr. 47-52).  Thereafter, Downs requested and received an April 14, 2008, hearing before an Administrative Law Judge ("ALJ").  (Tr. 33-47).  However, in a September 26, 2008, written decision, the ALJ determined that Downs was not disabled under the Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to work that exists in substantial numbers in the national economy.  (Tr. 21-31).  Downs appealed the adverse decision to the

Appeals Council.  On September 30, 2009, however, the Appeals Council denied Downs' request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-4).

On November 23, 2009, Downs sought review before this court.  Succinctly stated, he contends that the ALJ's residual functional capacity assessment is not supported by substantial evidence and his Step Five determination is tainted by a defective hypothetical posed to the vocational expert.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program

throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

3

an adjustment to other work in the economy.
*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I.   Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Downs did not engage in substantial gainful activity during the relevant period.  (Tr. 26).  At Step Two, he found that he suffers from "disorders of the spine," which constitutes a severe impairment.  *Id*.  He concluded, however, that the impairment(s) was not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process.  (Tr. 27).

### II.   Residual Functional Capacity

The ALJ next determined that Downs retains the residual functional capacity to perform light work, reduced by the ability to only occasionally climb, balance, stoop, kneel, crouch, and crawl.  *See* Tr. 27, 29.<sup>1</sup>  Plaintiff contends that the ALJ's residual functional capacity assessment

---

<sup>1</sup>   Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it

4

is not supported by substantial evidence.

> Quoting Social Security Ruling 96-8p, the Fifth Circuit has observed that,

> a residual functional capacity (RFC) is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.  The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.  However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work. . . . RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  Each function must be considered separately.  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . .  The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citations and internal quotation marks omitted).[2]

> a)   <u>Medical Chronology</u>

The medical record in this case documents plaintiff's long-term back problems.  In April-

August 2005, Downs saw several physicians for his cervical back pain, including a neurologist,

an orthopedic surgeon, a neurosurgeon, and a pain management specialist.  *See* Tr. 140-167).  In

---

> requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

> [2]  Although Social Security Rulings are not binding on the federal courts, *Myers, supra*, they are "binding on all components of the Social Security Administration."  20 C.F.R. § 402.35 (b)(1).

an August 11, 2005, note, Bernie McHugh, Jr., M.D., wrote that he had been following Downs for cervical stenosis, and that he had received conservative treatment.  (Tr. 140).  Downs underwent pain management evaluation and treatment – epidural steroid injections, which accorded him significant relief.  *Id*.  McHugh indicated that Downs had returned to the workplace, and was without any significant complaints.  *Id*.  He recommended continuing range of motion exercises and to return on an as-needed basis.  *Id*.

In November 2005, Downs' back pain apparently relapsed.  *See* Tr. 304.  He also was treated for chest pain, which ultimately was diagnosed as non-cardiac in origin.  (Tr. 189-207).  On February 20, 2006, Downs reported to Jack Noble, M.D., that he was stressed at work and had had a confrontation.  (Tr. 220-221).  Dr. Nobles diagnosed high blood pressure, on the job stress, and sleep disorder.  *Id*.  On March 1, 2006, Downs underwent a laparoscopic cholecystectomy.  (Tr. 177-179).

By May 2006, Downs had returned to Dr. McHugh.  In a May 16, 2006, note, Dr. McHugh remarked that he was following Downs for cervical pain.  (Tr. 248).  McHugh noted that Downs had responded well to conservative treatment.  (Tr. 248).  Previous studies suggested cervical stenosis.  *Id*.  He returned today with increased cervical pain, numbness, and tingling of the lower extremities.  *Id*.  He was off of work secondary to a cholecystectomy.  *Id*.

On June 27, 2006, Dr. McHugh wrote that he was following Downs in his office for cervical and lumbar pain. (Tr. 247).  Diagnostic testing demonstrated that Downs had stable degenerative changes throughout the cervical spine from C3 through C7.  *Id*.  McHugh recommended continued physical "activity" with regard to the cervical spine. *Id*.  His lumbar spine had significant degeneration of the L4/L5 and L5/S1 disc space and some central and lateral recess stenosis.  *Id*.  At present, Downs had complaints of low back pain and right hip

pain. *Id*. McHugh intended to refer him to physical therapy. *Id*. He was to follow-up in twelve weeks. *Id*.

Downs underwent physical therapy from June-July 2006. (Tr. 269-301). In a June 28, 2006, patient worksheet, Downs indicated that his sleep was mildly disturbed. (Tr. 269-270). He reported that he could carry heavy loads with increased symptoms, but could manage light to medium lifting. *Id*. Although he could walk on uneven ground, he could not stand for more than ten minutes. *Id*. He experienced slight headaches, less than three times per week. (Tr. 270). He could sit in a chair as long as he likes. *Id*. His worst pain in the past 24 hours was a 4/10. *Id*.

Downs' physical therapy discharge summary from July 20, 2006, indicates that he felt minimal to moderate pain in his neck and lower back. (Tr. 297). His lumbar strength was very good 5/5. *Id*. His pain rating was a four. *Id*. He demonstrated a high functional deficit in relation to his subjective complaints. (Tr. 298).

On July 5, 2006, Randle Hawthorne, D.C., reported to Metlife that Downs suffered from cervical myofascitis, disc disorder without myelopathy, and thoracic radiculitis. (Tr. 309-310). Hawthorne restricted Downs from bending at the waist, no lifting more than ten pounds, no rotation of the neck, and no repetitive neck movement. *Id*. Hawthorne had not returned Downs to work at that time. *Id*.

On September 20, 2006, a disability examiner,[3] Brenda Thomas, completed a Physical Residual Functional Capacity Form, wherein she determined that Downs was able to perform a full range of light work. (Tr. 329-336).

On November 15, 2007, Dr. McHugh noted that Downs had returned for routine

---

[3] The Disability Determination and Transmittal notice indicates that Thomas is a disability examiner. *See* Tr. 47.

followup.  (Tr. 344).  Neurologically, he was unchanged and stable.  *Id*.  McHugh indicated that

Downs had a chronic syndrome.  *Id*.  He reported a recent onset of predominantly left lateral

elbow pain.  *Id*.  Downs was to return in one year.  *Id*.

      After the ALJ's decision, and in connection with his request for review before the

Appeals Council, plaintiff submitted two medical statements that were signed by Dr. McHugh,

but completed by a physician's assistant on February 19, 2009.  (Tr. 9-10).  The statements

indicated that Downs' spinal disorder causes him moderate pain that limits him to standing

and/or sitting for 15 minutes at a time.  (Tr. 9).  He can never bend and only occasionally stoop

and move his neck.  *Id*.  He can occasionally lift 20 pounds and frequently lift 10 pounds.  *Id*.  He

can work zero hours per day.  *Id*.

    b)    <u>ALJ's Rationale and Plaintiff's Assignments of Error</u>

      In his decision, the ALJ mistakenly characterized the September 20, 2006, Physical

Residual Functional Capacity Form (the "PRFC form"), that was completed by the disability

examiner, as a determination by "state agency medical consultants."  (Tr. 28-29).  The ALJ added

that he was assigning "controlling weight to the state agency conclusion and adopts their opinion

as it is consistent with other significant evidence and is well supported by objective medical

findings.  No new evidence is sufficiently persuasive to alter the limitations imposed by the state

agency physicians."  *Id*.[4]  Based upon Downs' testimony, however, the ALJ proceeded to limit

him to occasional postural activities, the PRFC form notwithstanding.  (Tr. 29).

      In support of remand, plaintiff emphasizes that the ALJ misread the PRFC form as being

completed by an agency medical consultant when, in fact, it was completed by a disability

---

    [4] The court observes that opinions from sources other than treating sources are never
entitled to "controlling weight."  (Program Operations Manual System, DI 24515.004).

examiner.  The Commissioner concedes such.  (Def. Brief, pg. 3).  Indeed, a disability examiner is not a medical doctor, and her opinion is not considered an acceptable medical source statement or afforded the same weight as an opinion of a medical or psychological consultant of the state agency.  *See* 20 C.F.R. §§ 416.927(f) and 416.913(a)-(d).

Despite this error, the Commissioner argues that the ALJ's residual functional capacity assessment otherwise is supported by other substantial evidence of record.  It is manifest that the lack of a medical source statement describing the types of work that the claimant is still capable of performing does not, in, and of itself, render the record incomplete.  *Ripley v. Chater*, 67 F.3d 552, 557-558 (5th Cir. 1995).  Instead, the court must look to determine whether the ALJ's determination otherwise is supported by substantial record evidence.  *Id.*

In *Ripley*, as here, the Commissioner argued that the medical evidence substantially supported the ALJ's decision.  *Ripley, supra*.  The Commissioner pointed to medical reports discussing the extent of plaintiff's injuries, including a four year history of back troubles.  *Id*. However, without reports from qualified medical experts, the Fifth Circuit could not conclude that the evidence substantially supported the ALJ's residual functional capacity assessment because the court was unable to determine the "effects of [plaintiff's] conditions, no matter how 'small.'" *Id*.  The only evidence that described plaintiff's ability to work was plaintiff's own testimony, which, when read in proper context, failed to support the ALJ's residual functional capacity assessment.  *Id*.

The instant case is materially indistinguishable from *Ripley, supra*.  The record is devoid of a medical source statement that supports a residual functional capacity for light or even

9

sedentary work.[5] Moreover, plaintiff's own testimony was not consistent with an exertional

capacity for light work or even sedentary work.[6] Under these circumstances, the court is

constrained to find that the ALJ's assessment is not supported by substantial evidence. *See*

*Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely

---

[5] In his decision, the ALJ characterized Dr. McHugh's note from June 27, 2006, as "suggest[ing]" that Downs was capable of returning to work. *Compare* Tr. 28 with 247. Although Dr. McHugh recommended continued physical "activity" with regard to the cervical spine, he also referred plaintiff to physical therapy. (Tr. 247). There is no indication in Dr. McHugh's note that he returned Downs to work. Moreover, in connection with his request for review before the Appeals Council, plaintiff submitted statements from Dr. McHugh, which do not comport with the ALJ's residual functional capacity assessment. (Tr. 9-10). This evidence constitutes part of the instant record – provided that it is new, material and related to the period before the ALJ's decision. *See Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).

There is little question that this evidence is new and material. Moreover, if Dr. McHugh did not treat Downs during the period since the ALJ's decision and there is no other evidence of a subsequent deterioration of his condition, then this additional evidence may be related to the relevant period and thereby further undermine the ALJ's residual functional capacity assessment. Plaintiff and the ALJ may explore this issue upon remand.

The ALJ also endeavored to discount the opinion of plaintiff's chiropractor, Randy Hawthorne, based upon his belief that Hawthorne's opinion was inconsistent with the findings of plaintiff's treating physician, Dr. McHugh. (Tr. 28). If supported by the record, this is a valid reason to discount the opinion of a non-"acceptable medical source." *See* SSR 06-03p; *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (recognizing that the regulations accord less weight to other sources such as chiropractors than to medical doctors). At this stage, however, the record is not so disposed. *See* discussion, *supra*. The ALJ may re-address this issue upon remand.

[6] The ALJ remarked that plaintiff testified that he drove a car and went to visit his father on a daily basis. (Tr. 28). While these activities reflect some functional capacity, they do not begin to approach "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *See* SSR 96-8p. Furthermore, although plaintiff indicated in June 2006 that he could sit without limitation, Tr. 270, by the time of the hearing, he could only sit for up to an hour before experiencing discomfort. (Tr. 44). Similarly, while at the time of the hearing plaintiff testified that he could stand up to an hour before needing to sit down, he indicated in June 2006 that he could stand for but ten minutes. *Id*. Of course, to perform a full range of sedentary work, an individual must be able to sit for approximately six hours of an eight hour workday. *See* SSR 96-9p. Further, the full range of light work requires the ability to walk or stand for approximately six hours in an eight hour day. *Weary v. Astrue*, 2008 WL 3820989 (5th Cir. Aug. 15, 2008) (unpubl.).

on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley, supra* (substantial evidence lacking where:  no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

## III.    Step Five and Remand

Because the foundation for the Commissioner's Step Five determination was premised upon a residual functional capacity that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled during the relevant period is also not supported by substantial evidence.[7]

### Conclusion

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or

---

[7]   Although not necessary to decide this matter, the undersigned observes that when the ALJ poses a hypothetical(s) to the vocational expert for purposes of Step Five of the sequential evaluation process, he should ensure that it contemplates the particular claimant's vocational factors.

response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 23rd day of November 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE